UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

IRA TROCKI, trading as JACK          1:19-cv-13638-NLH-KMW
TROCKI DEVELOPMENT, LLC,
                                     **OPINION**
              Plaintiff,

       v.

PENN NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, INC.,

              Defendant.

_____

**APPEARANCES**

LOUIS M. BARBONE
JACOBS & BARBONE, ESQS.
1125 PACIFIC AVENUE
ATLANTIC CITY, NJ 08401

       *Counsel for Plaintiff.*

SAMUEL EDWARD PAUL
STRADLEY RONON STEVENS & YOUNG LLP
2005 MARKET STREET
SUITE 2600
PHILADELPHIA, PA 19103

WILLIAM THOMAS MANDIA
STRADLEY RONON STEVENS & YOUNG LLP
457 HADDONFIELD ROAD
SUITE 100
CHERRY HILL, NJ 08002

       *Counsel for Defendant.*

**HILLMAN, District Judge**

       This matter comes before the Court on motions made by each

party.  Defendant Penn National Mutual Casualty Insurance

Company, improperly pled as Penn National Mutual Casualty

Insurance Company, Inc. ("Defendant") moves to dismiss Plaintiff Ira Trocki's ("Plaintiff") third amended complaint. (ECF No. 9). Plaintiff cross-moves for leave to file a fourth amended complaint. (ECF No. 13). These motions have been fully briefed and are ripe for adjudication. For the reasons that follow, both motions will be denied.

## BACKGROUND

The Court draws its facts from Plaintiff's third amended complaint (ECF No. 6), which appear nearly identical to the factual allegations advanced in his proposed fourth amended complaint. Plaintiff develops and manages real estate. From 2006 through 2014, Plaintiff, through his insurance agents, sought and obtained commercial property insurance and general commercial liability coverage from Defendant. Plaintiff renewed these polices annually, paying increased premiums as Defendant would demand. Unbeknownst to Plaintiff, these premium increases were caused in part by the application of a coverage adjustment tool called "inflation guard."

According to Plaintiff, inflation guard automatically increases Plaintiff's coverage limits to account for year-over-year inflation in property value, but also has the effect of increasing Plaintiff's premium costs. Plaintiff never knew inflation guard was being applied to his polices and was instead lead to believe that the increased premium demands were a

2

product of market-rate inflation, not application of some coverage enhancer or modifier that Plaintiff did not and would not have agreed to pay for.

Plaintiff's insurance policies do not indicate that inflation guard applies to his agreements and the declaration pages Defendant sent Plaintiff during the renewal process were equally silent about inflation guard's application.  This is so, Plaintiff alleges, even though Defendant's internal policy requires that any insurance policy to which inflation guard would apply must clearly state as much on the face of the agreement.  Plaintiff alleges Defendant intentionally concealed inflation guard's application to induce him to pay unnecessarily increased premiums.

Essentially, Plaintiff alleges Defendant applied an extracontractual, undisclosed premium formula to secretly increase his premiums and defraud him.  Plaintiff advances a common law fraud claim and a claim under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* (the "NJCFA").  Defendant moved to dismiss Plaintiff's third amended complaint on August 2, 2019 (ECF No. 9).  Plaintiff opposed Defendant's motion and cross-moved for leave to file a fourth amended complaint on September 19, 2019 (ECF No. 13).  These motions have been fully briefed and are ripe for adjudication.

## DISCUSSION

I.   <u>Subject Matter Jurisdiction</u>

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

II.  <u>Legal Standard</u>

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).

"Dismissal for failure to state a claim is appropriate when it is obvious, either from the face of the pleading or from other court records, that an affirmative defense such as res judicata will necessarily defeat the claim." <u>McLaughlin v. Bd. of Trs. of the Nat'l Elevator Indus. Health Ben. Plan</u>, 686 Fed. Appx. 118, 121 (3d Cir. 2017) (<u>citing Jones v. Bock</u>, 549 U.S. 199, 215, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007)).

Because Plaintiff's complaint exclusively alleges causes of action sounding in fraud, Rule 9(b) of the Federal Rules of Civil Procedure governs. Fed. R. Civ. P. 9 ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

4

III. <u>Defendant's Motion To Dismiss</u>

Defendant advances two arguments in support of its motion. First, Defendant argues that the economic loss doctrine bars Plaintiff's common law fraud claim because that claim emanates from a contract between the parties. Second, Defendant argues that the NJCFA does not apply to Plaintiff's purchase of commercial insurance coverage, and even if it did, Plaintiff has not adequately stated a claim under the NJCFA. Each argument is addressed in turn.

A. <u>Economic Loss Doctrine</u>

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from contract." <u>RNC Sys., Inc. v. Modern Tech. Grp., Inc.</u>, 861 F. Supp. 2d 436, 451 (D.N.J. 2012) (quoting <u>Chen v. HD Dimension Corp.</u>, No. 10-863, 2010 WL 4721514, *8 (D.N.J. Nov. 15, 2010)). Whether a tort claim can proceed alongside or in the stead of a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties. <u>Id.</u> (citations omitted). "Fraud claims can proceed alongside breach of contract claims where there exists fraud in the inducement of a contract or an analogous situation based on pre-contractual misrepresentations." <u>Id.</u> (quoting <u>Barton v. RCI, LLC</u>, No. 10-3657, 2011 WL 3022238, *7 (D.N.J. July 22,

2011)).  Specifically, "a plaintiff may be permitted to proceed with tort claims sounding fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." Id. (quoting Chen, 2010 WL 4721514 at *8.

Plaintiff's claim arises out of the parties' contractual arrangement only in the broadest sense that Plaintiff bought insurance from Defendant pursuant to a contract.  However, Plaintiff's allegations relate to inherently extracontractual grievances.  Specifically, Plaintiff alleges that Defendant sold him a contract in which premiums were to be calculated in one manner (without application of inflation guard) but secretly applied a different formula (applying inflation guard). Therefore, Plaintiff alleges he was induced into the agreement by false promises regarding the product he was purchasing.

When a Plaintiff alleges a hidden or undisclosed fee that is not barred by an express term or warranty found in a contract, conceive such a claim as breach of contract could be problematic.  Since no express or implied term of the contract was breached, Plaintiff might be barred from asserting a breach of contract claim.  However, if Defendant's theory held true, the economic loss theory would bar advancement of a fraud claim arising from the same fact pattern.  Defendants should find no

6

protection under the economic loss doctrine when Plaintiff's
claims are inherently extrinsic to the terms of the relevant
contract.  As such, this claim will be permitted to proceed.

    B. <u>NJCFA</u>

        Defendant advances two arguments in support of its position
that dismissal of Plaintiff's NJCFA claim is appropriate.
First, Defendant argues that the NJCFA does not apply to
business-to-business transactions for commercial insurance.  In
the alternative, Defendant argues that Plaintiff has not stated
a viable claim under the NJCFA.  Plaintiff rejects both of
Defendant's arguments.

    1. <u>The NJCFA May Apply To Business-To-Business Transactions
       For The Types Of Commercial Insurance Coverage At Issue In
       This Case</u>

        Defendant argues that the NJFCA does not apply to
transactions between corporate entities in their procurement of
the types of commercial insurance coverage at issue in this
case.  The Court disagrees.

        The NJCFA prohibits the act, use, or employment by any
person of any unconscionable commercial practice, deception,
fraud, false pretense, false promise, misrepresentation, or the
knowing concealment, suppression, or omission of any material
fact with intent that others rely upon the act in connection
with the sale or advertisement of any merchandise.  N.J. Stat.
Ann. § 56:8-2.  The NJCFA's definition of "person" includes

business entities, N.J. Stat. Ann. § 56:8-1, and under New
Jersey law, "a corporation may qualify as a person under the Act
when it finds itself in a consumer[-]oriented situation." BOC
Group, Inc. v. Lummus Crest, Inc., 597 A.2d 1109, 1112 (N.J.
Super. Ct. Law Div. 1990).

The New Jersey Supreme Court addressed whether the sale of
insurance is covered by the NJCFA in Lemelledo v. Beneficial
Management Corp., 696 A.2d 546 (N.J. 1997).  Although the CFA
does not explicitly name insurance policies as covered
"merchandise," the court held that "the statute's language is
ample enough to encompass the sale of insurance policies as
goods and services that are marketed to consumers." Id. at 551;
Alpizar-Fallas v. Favero, 908 F.3d 910, 915-16 (3d Cir. 2018).
In so finding, the Lemelledo court endorsed a broad application
of the statute: "[t]he language of the CFA evinces a clear
legislative intent that its provisions be applied broadly in
order to accomplish its remedial purpose, namely, to root out
consumer fraud." Alpizar-Fallas, 908 F.3d at 916 (quoting
Lemelledo, 696 A.2d at 551).

In support of its position, Defendant refers the Court to
In re Tri-State Armored Servs., Inc., 332 B.R. 690, 734 (Bankr.
D.N.J. 2005), aff'd, 366 B.R. 326 (D.N.J. 2007).  In In re Tri-
State, the bankruptcy trustee filed a cross-claim alleging that
the plaintiff violated the NJCFA when it refused to pay benefits

8

under a commercial crime, fraud, and dishonesty insurance policy.  The plaintiff sought a declaratory judgment determining that the bankruptcy estate of the Chapter 7 debtor was not entitled to insurance coverage under the crime insurance policies issued by the plaintiff.  Id. at 697.  After acknowledging that the sale of insurance policies is an act covered under the NJCFA, the bankruptcy court concluded that employee dishonesty, crime, and disappearance insurance policies are not of the type generally available to the public, and therefore, are so specialized as to fall outside of the NJCFA. Id. at 734.  While the trustee appealed to the District Court, and while the District Court affirmed, the trustee did not appeal the NJCFA finding, and the District Court did not address it.

In re Tri-State is factually distinguishable.  Commercial property insurance and commercial general liability insurance differ from more specialized employee crime and dishonesty polices, in that they are of the routine kind readily available in the insurance marketplace to routine consumers.  See Lemelledo, 696 A.2d at 551 (find the NJFCA applies to businesses who find themselves positioned as consumers).  Recognizing that the NJCFA is intended to apply broadly in rooting out fraud, and finding that Plaintiff has adequately alleges a fraudulent practice, the Court finds that the NJCFA should apply.  See

Alpizar-Fallas, 908 F.3d at 916; Lemelledo, 696 A.2d at 551.  As

such, the Court will not dismiss Plaintiff's action on this

basis.

   2. Plaintiff Has Pled A Viable Claim Under The NJCFA

     The NJCFA affords a private right of action to consumers

who have suffered from unconscionable or fraudulent practices in

the marketplace.  Mickens v. Ford Motor Co., 900 F. Supp. 2d

427, 435-36 (D.N.J. 2012).  The NJCFA is to be liberally

construed in favor of the consumer.  Id. (citing Cox v. Sears

Roebuck & Co., 647 A.2d 454 (N.J. 1994)).  "To state a prima

facie case under the CFA, a plaintiff must demonstrate three

elements: (1) unlawful conduct by the defendant; (2) an

ascertainable loss by the plaintiff; and (3) a causal connection

between the defendant's unlawful conduct and the plaintiff's

ascertainable loss."  Id. at 436 (citing Payan v. GreenPoint

Mortgage Funding, 681 F. Supp. 2d 564, 572 (D.N.J. 2010);

Bosland v. Warnock Dodge, Inc., 964 A.2d 741, 749 (N.J. 2009)).

     Plaintiff has sufficiently alleged aggravating

circumstances to satisfy the NJCFA's elements.  Plaintiff

alleges an unconscionable practice of applying undisclosed or

hidden automatic premium escalations to insurance contracts that

do not appear to call for or disclose such escalations.  At its

core, Plaintiff's allegations necessarily implicate an

extracontractual fraud.  Without disclosure of these charges,

Plaintiff was deprived of the opportunity to negotiate them away or seek an alternative carrier.  While it is true the product Plaintiff received increased his coverage limits to protect against inflation, non-disclosure of such procedures – and as Plaintiff alleges, intentional concealment of them – may be viewed as unlawful and fraudulent behavior.  This type of allegedly unfair and undisclosed business practice is within the spirit and scope of the NJCFA.  Therefore, Plaintiff's NJCFA claim will not be dismissed.

## IV.  Plaintiff's Cross-Motion For Leave To Amend

Plaintiff cross-moves for leave to file a fourth amended complaint (ECF No. 13).  The proposed fourth amended complaint does not appear to alter the factual allegations, renews claims for common law fraud and violations of the NJCFA, and proposes to add a third cause of action for violations of the Commercial Insurance Deregulation Act of 1982, N.J. Stat. Ann. § 17:29AA-1 *et seq.* (the "Act") and agency rules relevant thereto, codified in New Jersey Administrative Code ("N.J.A.C."), § 11:13-1.2. Plaintiff provides a red-lined version of his complaint indicating the only substantive changes he seeks to advance relate to the inclusion of claims arising under the Act and its progeny.  As such, the Court addresses only whether Plaintiff should be permitted to amend his complaint to add a claim pursuant to the Act.  Defendant argues that the proposed

11

addition of such a claim would fail as futile.  The Court agrees.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Rule 15(a)(2) further "requires that leave to amend the pleadings be granted freely 'when justice so requires.'"  Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) (citing Fed. R. Civ. P. 15(a)) ("We have held that motions to amend pleadings should be liberally granted."). Thus, "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."  Id. (internal quotations, citations, and emphasis omitted); see also Haynes v. Moore, 405 F. App'x 562, 564 (3d Cir. 2011) (noting that even though leave to amend under Rule 15 should be freely given, "a district court may exercise its discretion and deny leave to amend on the basis of undue delay, bad faith, dilatory motive, prejudice, or futility.").

N.J.A.C. 11:13-1.4(b) provides that "[p]ursuant to N.J.S.A. 17:29AA-11 policy forms shall not be unfair, inequitable, misleading or contrary to law, nor shall they produce rates, which are excessive, inadequate or unfairly discriminatory."

The Act similarly provides that "[p]olicy forms shall not be unfair, inequitable, misleading or contrary to law, nor shall they produce rates that are excessive, inadequate or unfairly discriminatory." N.J. Stat. Ann. § 17:29AA-11. Plaintiff, however, skips a step in the analysis: determining whether the code provision he cites creates a private right of action. The Court is not convinced that the Act or its administrative counterpart create any such private right of action, justiciable in the first instance, in this forum.

A review of the relevant statutory and administrative provisions does not reveal an explicit right of private action. Therefore, the Court looks to whether an implicit right of private action might exist. As the Supreme Court has instructed, "unless [the] congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." Lawrence Twp. Bd. of Educ. v. New Jersey, 417 F.3d 368, 371 (3d Cir. 2005) (quoting Thompson v. Thompson, 484 U.S. 174, 179, 108 S. Ct. 513, 98 L.Ed.2d 512 (1988)). A review of the statutory framework suggests that violations of the Act are to be addressed, in the first instance, by the State's insurance commissioner and not this Court:

the commissioner may, if he finds that any person,

partnership, association, corporation, insurer, or
rating organization has willfully violated any
provision of this act, <u>impose a penalty of not less
than $25.00 nor more than $500.00 for each violation</u>.
No such penalty shall be imposed, except upon at least
10 days' written notice to such person, partnership,
association, corporation, insurer, or rating
organization, specifying the specific violation, and
naming a date and place for a hearing on the violation
so charged.  If the commissioner shall find, upon the
evidence placed before him at the hearing, that the
person, partnership, association, corporation,
insurer, or rating organization is guilty of any
violation of the provisions of this act, he shall make
an order briefly stating his findings, and specifying
the penalty imposed.  The imposition of such a penalty
shall, in the case of a licensed broker, or agent, or
in the case of a rating organization, automatically
suspend the license of the broker or agent or rating
organization until such time as the penalty shall be
paid.  The commissioner may file in the office of the
Clerk of the Superior Court, a certificate stating the
amount of any penalty assessed pursuant to the
provisions of this section, and the name of the
person, partnership, association, corporation,
insurer, or rating organization against whom or which
the penalty has been assessed, and thereupon the Clerk
of the Superior Court shall enter upon his record of
docketed judgments the certificate, or an abstract
thereof, and shall duly index the same.  From the time
of the docketing, the certificate shall have the same
effect as a judgment obtained in the Superior Court,
Law Division, and the commissioner shall have all
remedies and may take all the proceedings for the
collection thereof which may be had or taken upon the
recovery of such a judgment.

N.J. Stat. Ann. § 17:29AA-26 (emphasis added).  The quoted

statutory provision suggests the New Jersey Legislature did not

intend to create a private right of action under the Act.

Instead, as the Legislature made clear to repeat, the Act

empowers the insurance commissioner to take action against those

in violation of the Act.  Finding the Act and its progeny do not create a private right of action, the Court will deny Plaintiff's motion for leave to amend to add a cause of action arising under the Act as doing so would be futile.

## CONCLUSION

For the reasons expressed above, Defendant's motion to dismiss Plaintiff's third amended complaint (ECF No. 9) will be denied, as will Plaintiff's cross-motion for leave to file a fourth amended complaint (ECF No. 13).  An appropriate order will be entered.


Date: June 24, 2020                    s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.