### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

_____

IRA TROCKI, trading as JACK
TROCKI DEVELOPMENT, LLC,

        Plaintiff,

   v.

PENN NATIONAL MUTUAL CASUALTY
INSURANCE COMPANY, INC.,

        Defendant.

_____

1:19-cv-13638-NLH-MJS

**OPINION**

**APPEARANCES**

LOUIS M. BARBONE
JACOBS & BARBONE, ESQS.
1125 PACIFIC AVENUE
ATLANTIC CITY, NJ 08401

DAVID CASTALDI
JACOBS & BARBONE, ESQS.
1125 PACIFIC AVENUE
ATLANTIC CITY, NJ 08401

    _Counsel for Plaintiff._

SAMUEL EDWARD PAUL
STRADLEY RONON STEVENS & YOUNG LLP
2005 MARKET STREET
SUITE 2600
PHILADELPHIA, PA 19103

WILLIAM THOMAS MANDIA
STRADLEY RONON STEVENS & YOUNG LLP
457 HADDONFIELD ROAD
SUITE 100
CHERRY HILL, NJ 08002

    _Counsel for Defendant._

**HILLMAN**, District Judge

Before the Court is Pennsylvania National Mutual Casualty Insurance Company's ("Defendant") motion for summary judgment on all counts alleged by Ira Trocki ("Plaintiff").  (ECF 38).  For the reasons expressed below, Defendant's motion will be granted in its entirety.

<u>BACKGROUND</u>

The instant matter before the Court arises out of a dispute over inflation adjustments made to insurance policies that Plaintiff held with Defendant.  Plaintiff is the owner of a real estate development and management company.  From 2006 through 2014, Plaintiff, through his insurance agents, sought and obtained commercial property insurance and general commercial liability coverage from Defendant.  Plaintiff renewed these polices annually, paying increased premiums as Defendant would demand.  Plaintiff alleges that Defendant used a mechanism called Inflation Guard to increase his coverage limits and insurance premiums to account for yearly inflation in property value.  Plaintiff's allegation is that he never knew Inflation Guard was being applied to his policies.  Plaintiff advances a common law fraud claim and a claim under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* (the "NJCFA") based on the application of Inflation Guard.

Notably, prior to the filing of the instant action,

Plaintiff sued Defendant in New Jersey Superior Court in 2014
for a dispute related to one of the policies relevant to this
matter (the "2014 Action").  Plaintiff contends that it learned
about Inflation Guard during the pendency of the trial in the
2014 Action.  (ECF 41 at 6).  Plaintiff never sought leave to
amend his complaint in the 2014 Action to add claims based on
the use of Inflation Guard.  Prior to the rendering of a verdict
in the 2014 Action, the parties executed a general release (the
"General Release") which states in relevant part:

> I hereby release and give up any and all claims, rights,
> and causes of action which I may have against You with
> regard to any and all claims that were or could have been
> asserted in the lawsuit pending in the Superior Court of
> New Jersey, Law Division, Civil Part, Atlantic County,
> captioned Ira and Shari Trocki trading as Jack Trocki
> Development  Company. LLC  v. Penn Mutual National
> Casualty  Company.  Inc., et al, under Docket No, ATL-L-
> 5772-14. This Release includes, but is not limited to, all
> claims for any and all damages which relate to Policy No.
> CL9 0639429, issued by Releasee with regard to the
> previously owned property of the Releasor located at 475
> Cross Keys-Hurffville Road in Sewell, Gloucester County,
> New Jersey.

(ECF 38-23 at 5).

Defendant moved for summary judgment in this matter on July
8, 2021, in which it argues that summary judgment is appropriate
because the parties agree that Inflation Guard was never used on
any of Plaintiff's policies, the claims are barred by the entire
controversy doctrine, and the claims are barred by the General
Release.  (ECF 38).  Plaintiff opposed the motion on August 2,

3

2021, (ECF 41) and Defendant filed a reply brief on August 9, 2021 (ECF 42).  It is against this backdrop that the Court considers the motion for summary judgment.

## DISCUSSION

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

4

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.  Scott v. Harris, 550 U.S. 372, 381 (2007).

## I.   **Analysis**

The Court will grant Defendant's motion for summary judgment with respect to Plaintiff's claims because there is no genuine dispute of material fact.  Plaintiff alleges two counts of fraud against Defendant, one based on common law and the other premised on the NJCFA.  Defendant raises three arguments in support of its motion for summary judgment.  First, it argues

that there is no dispute that it never applied Inflation Guard
to any of Plaintiff's policies.  Next, it argues that
Plaintiff's claims are barred by the General Release executed in
the 2014 Action.  Finally, it argues that the entire controversy
doctrine bars this suit, because the claims that are the subject
of the current suit should have been brought in the 2014 Action.

Both the claim for common law fraud and the claim under the
NJCFA fail for the simple reason that both parties agree that
Defendant never applied Inflation Guard to Plaintiff's policies.
The elements of common law fraud are "'(1) a material
misrepresentation of a presently existing or past fact; (2)
knowledge or belief by the defendant of its falsity; (3) an
intention that the other person rely on it; (4) reasonable
reliance thereon by the other person; and (5) resulting
damages.'" Allstate New Jersey Ins. Co. v. Lajara, 117 A.3d
1221, 1231 (N.J. 2015) (quoting Banco Popular N. Am. v. Gandi,
876 A.2d 253 (N.J. 2005)).

Under the NJCFA, a plaintiff must demonstrate
three elements: (1) unlawful conduct by the defendant; (2) an
ascertainable loss by the plaintiff; and (3) a causal connection
between the defendant's unlawful conduct and the plaintiff's
ascertainable loss. Bosland v. Warnock Dodge, Inc., 197 N.J.
543, 964 A.2d 741, 749 (2009).  Regarding the second element,
the plaintiff must show that he or she has "suffer[ed] a

definite, certain and measurable loss, rather than one that is merely theoretical." Id.; see Weinberg v. Sprint Corp., 173 N.J. 233, 801 A.2d 281, 283 (2002) ("[T]o have standing under the [CFA] a private party must plead a claim of ascertainable loss that is capable of surviving a motion for summary judgment."). Further, when the alleged misconduct consists of an omission, the plaintiff must also demonstrate the defendant's intent. See Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454, 462 (1994).

Fundamentally, Plaintiff cannot show that he suffered "damages" or any "ascertainable loss" as a result of the fraudulent application of Inflation Guard, because both parties agree that Inflation Guard was never actually applied. Indeed, Defendant's Statement of Undisputed Material Facts[1] states that "Penn National did not apply Inflation Guard to Plaintiff's Policies[,]" and that "Penn National did not charge Plaintiff any premium for Inflation Guard coverage." (SOMF ¶ 104-105). To those statements, Plaintiff replies "Admitted". (RSOMF ¶ 104-105). Those alone defeat both of Plaintiff's counts.

Rather than admit defeat, though, Plaintiff tries to pivot and argues for the first time in its opposition brief that even

---

[1] Defendant's Statement of Undisputed Material Facts (ECF 38-2) will be referred to as "SOMF" and Plaintiff's Responsive statement of Material Facts (ECF 41-1) will be referred to as "RSOMF."

though Inflation Guard was not applied to their policies,
Defendant's customary inflation adjustments were fraudulent.
Plaintiff states, "Here, Penn National's practice is to
automatically increase the limits on commercial policies without
authorization.  Whether it's inflation guard or an automatic
inflationary increase is of no moment under the CFA." (ECF 41 at
5).  The Court will not countenance an entirely new legal theory
being raised at the summary judgment stage of the case. TL of
Fla., Inc. v. Terex Corp, 706 F. App'x 89, 91 (3d Cir. 2017)
(affirming the District Court's decision where it "rejected what
it interpreted to be a materially different damages theory
advanced by the Plaintiff at summary judgment as untimely."); 
Carita v. Mon Cheri Bridals, LLC, 2012 WL 3638697, at *3 (D.N.J.
Aug. 22, 2012) ("Plaintiff cannot now be allowed to change its
theory of liability under which this case has proceeded in the
face of a dispositive motion for summary judgment.")

    Even so, Plaintiff is not able to make out a prima facie
case under either count under the new theory that there were
inflation adjustments to its policies without authorization.  As
outlined above a claim for common law fraud requires a "material
misrepresentation" by the defendant and the NJCFA similarly
requires "unlawful conduct" by the defendant.  Plaintiff cannot
show either.  Both parties agree that prior to the renewal of
each policy, Defendant presented Plaintiff with what the new

policy limit and premium would be, and Plaintiff had the opportunity to review. (SOMF ¶ 38-41; RSOMF ¶ 38-41).  There is nothing in the record that otherwise creates a genuine issue of material fact otherwise and Plaintiff's untimely argument that "[t]he increase in building limit due to an automatic inflation increase is misleading and unclear in that it does not apprise the insured of why the building limit (and the premium) is being increased" (ECF 41 at 6) is not compelling.  Simply put, Plaintiff does not point to any law or any evidence in the record that would support the proposition that Defendant had an affirmative duty to disclose its formulas for calculating inflation increases.  See Est. of Maglione v. Gulf Oil Corp., 2007 WL 527940, at *5 (N.J. Super. Ct. App. Div. Feb. 22, 2007) ("In a business transaction there is no duty to disclose unless a fiduciary relationship exists between them [the contracting parties], unless the transaction itself is fiduciary in nature, or unless one party expressly reposes a trust and confidence in the other.") (internal quotation marks omitted).  Thus, Plaintiff has not made out a prima facie case that Defendant committed common law fraud or violated the NJCFA.

In light of the foregoing, the Court need not reach Defendant's arguments on the entire controversy doctrine and the General Release in order to resolve the instant motion. However, the entire controversy doctrine offers alternative

grounds for its holding.  Even assuming that Plaintiff first learned of Inflation Guard during the trial of the 2014 Action, it had to at least try to amend its complaint in that action to avoid being barred by the entire controversy doctrine.  The entire controversy doctrine seeks to have all claims revolving around a legal dispute presented in one action.  Olds v. Donnelly, 150 N.J. 424, 431, 696 A.2d 633, 637 (1997).  "The goals of the doctrine are to promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy."  Id.  A key part of the doctrine is that all claims that could have been brought in a prior action should have been brought in a prior action.  Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 323, 662 A.2d 523, 529 (1995) (explaining that the entire controversy doctrine "applies to constituent claims that arise during the pendency of the first action that were known to the litigant.")

Here, Plaintiff contends that it first learned of Inflation Guard during the trial in the 2014 Action.  Assuming arguendo that that is true, it is admittedly late in the course of proceedings to amend a complaint.  However, the New Jersey Court Rules allow amendment at any time in the course of a proceeding with the leave of the court.  N.J. Ct. R. R. 4:9-1 (noting that amendments may be accomplished at any time "by leave of court

10

which shall be freely given in the interest of justice"); Aetna
Health Inc. v. Biodiagnostic Lab'y Servs., L.L.C., 2021 WL
4598592, at *7 (N.J. Super. Ct. App. Div. Oct. 7, 2021)
("Although motions for leave to amend under Rule 4:9-1 should be
granted liberally, even on a remand after appeal, unless undue
prejudice would result[.]")

    Even though the trial court may decide that an amendment
would not be appropriate, a litigant may not strategically
decide to wait to present the claim, as that is for the trial
court to decide.  Mystic Isle Dev. Corp., 142 N.J. 310, 324, 662
A.2d 523, 530 ("It is for trial court to determine whether or
not joinder is appropriate in a given case, and thus litigants
should be compelled to bring all actions at one time.")
Plaintiff did not move to amend its complaint in the 2014
Action.  Given the fact that Plaintiff should have at least
tried to do so, the Court finds it fundamentally unfair to allow
these claims to proceed now. Id. at 529. (noting that fairness
is one of the underlying principles of the entire controversy
doctrine.  Thus, the Court alternatively holds that this matter
is barred by the entire controversy doctrine.[1]

---

[1] Similarly, given that the Plaintiff could have moved to amend
the complaint in the 2014 action, a fair reading of the General
Release supports a finding that the claims in the instant matter
are barred on that basis as well.  Plaintiff released "any and
all claims that were or could have been asserted in the" 2014
action. (ECF 38-24 at 22).  Based on a plain reading of the

## CONCLUSION

For the reasons expressed above, Defendant's motion for summary judgment (ECF 38) will be granted in its entirety.

An appropriate Order will be entered.


Date: February 11, 2022      /s  Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.

---

General Release and the avenues available to Plaintiff under the New Jersey Court Rules to have asserted its current claims in the 2014 matter, those claims are not viable here. Cf. Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 58 (3d Cir. 2001) ("[A] release usually will not be construed to bar a claim which had not accrued at the date of its execution or a claim which was not known to the party giving the release.")  Plaintiff knew of its claims before signing the General Release.  (SOMF ¶ 121; RSOMF ¶ 121).  Therefore, its claims are also barred on that ground.